ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA   2006 AUG -4  AM 11: 49

DUBLIN DIVISION          CLERK _____
                         SO. DIST. OF GA.

| | |
|---|---|
| JUDY BEASLEY, | ) |
| Plaintiff, | ) |
| v. | ) CV 305-023 |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Judy Beasley ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

### I. BACKGROUND

Based upon claims of disability dating back to May 4, 1994, Plaintiff applied for SSI, with a protective filing date of March 1, 2001. Tr. ("R"), p. 151. The claims were denied initially and upon reconsideration. R. 114-16; 119-21. Plaintiff then requested a hearing

before an Administrative Law Judge ("ALJ"). R. 122. Represented by counsel, Plaintiff appeared and testified at a hearing on July 25, 2002. R. 60-96. The ALJ then issued an unfavorable decision dated November 4, 2002, in which he determined that Plaintiff's residual functional capacity ("RFC") did not preclude Plaintiff from performing her past relevant work as a sewing machine operator, and therefore she was not under a "disability" as defined in the Social Security Act. R. 103-13.

Plaintiff then requested that the Appeals Council ("AC") review the ALJ's decision, resulting in the AC vacating the ALJ's November 4, 2002 decision and remanding the case back to the ALJ.[1] R. 137-41. The same ALJ that issued the November 4, 2002 decision then held another hearing on April 1, 2004. Plaintiff was again represented by counsel, and Plaintiff, her daughter, and a VE provided testimony. R. 34-59. Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ issued another unfavorable decision, dated July 20, 2004, in which he found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's major depressive disorder, emphysema, and daily headaches are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant is unable to perform any of her past relevant work (20 CFR § 416.965) but has the residual functional capacity for sedentary

---

[1] The details of the instructions in the AC's remand order are discussed in Part III.B.

> work.[2] She can understand and follow simple instructions; she can handle routine job stress and routine job changes; she can adequately deal with supervisors, coworkers, and the public; and she can adequately p[ay] attention and concentrate.
>
> 5. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. [Therefore,] the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 CFR § 416.920(g)).

R. 29-30.

When the AC denied Plaintiff's request for review of this July 20, 2004 decision, the ALJ's decision became the final decision of the Commissioner. R. 7-10. Having failed to convince the AC to review her case a second time, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia alleging that the ALJ committed reversible error by failing to comply with the remand order from the AC. Pl.'s Br., p. 1. The Commissioner brushes aside Plaintiff's arguments concerning compliance with the remand order, contending that the ALJ "substantially complied" with the remand order and maintaining that the "salient issue" is whether the ALJ's decision on the merits is sound. Comm'r's Br., pp. 4-7 & n.2.

---

[2]Sedentary work involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary

evidence is not based upon substantial evidence. <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. <u>DISCUSSION</u>

Plaintiff argues that the ALJ erred as a matter of law because he failed, on at least three counts, to comply with the instructions in the AC's remand order. Specifically, Plaintiff claims that the ALJ: (1) failed to provide reasons for the "obvious rejection of the opinion of Robert T. Coyle, Ph.D., a State agency non-examining medical consultant"; (2) failed to evaluate properly Plaintiff's subjective complaints; and (3) failed to pose a complete hypothetical question to the VE and then to properly use the information provided by the VE to determine that there were jobs available that Plaintiff could perform. Pl.'s Br., p. 1. The Commissioner disregards Plaintiff's framing of the issues and instead focuses on the more general issue of whether the determination that Plaintiff remains capable of performing "a substantial number of sedentary jobs in the national economy was supported by substantial evidence in the record and [is] legally correct." Comm'r's Br., p. 1. The Commissioner also suggests, contrary to prior rulings in the Southern District of Georgia and in reliance on an

unpublished decision from the Western District of Texas, that "enforcement of the details of Appeals Council's remand instructions is a task entrusted solely to the Appeals Council - and is not a proper matter for judicial review." Id. at 4 n.2.

### A. Availability of Judicial Review of Non-Compliance with AC's Remand Order

The Commissioner acknowledges that in Dunbar v. Barnhart, CV 104-114 (S.D. Ga. Sept. 26, 2005), the Honorable Dudley H. Bowen, Jr., United States District Judge, ruled that failure to comply with a remand order from the AC is subject to judicial review and grounds for a remand to the Commissioner. In Dunbar, the legal basis for reviewing compliance with an AC remand order was explained as follows:

> When a case is remanded by the AC to the ALJ, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order. 20 C.F.R. § 404.977 (emphasis added); see also Gibbs v. Barrnhart, No. 04-15285, 130 Fed. Appx. 426, 430 (11th Cir. May 5, 2005) (*per curiam*) (reviewing requirement for ALJ to follow instructions on remand from AC). Failing to follow the terms of the remand order is a legal error that requires this Court to remand the case to the Commissioner. Williams v. Secretary of Health and Human Serv., 1 F.3d 1243, No. 92-2031 (Table) (6th Cir. 1993) (*per curiam*); Hutchison v. Apfel, No. 2:98-CV-087, 2001 WL 336986, at *11 (N.D. Tex. 2001) (Magistrate Judge's Report and Recommendation, *adopted by* District Court Order dated March 29, 2001) ("It is clear from the record that the ALJ failed to follow the Appeals Council's order of remand. . . . As such, the ALJ erred as a matter of law. At the very minimum, this case should be remanded to defendant Commissioner . . . for development of the issues as had been previously ordered by the Appeals Council."); Mann v. Chater, No. 95 CIV. 2997(SS), 1997 WL 363592, at *3 (S.D.N.Y. 1997) ("The ALJ should have followed the order of the Appeals Council. Because he did not, I must remand this action." (internal citation omitted)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) (recognizing that legal error is cause for remand, even if substantial evidence supports Commissioner's factual findings).

Dunbar, CV 104-114, doc. no. 10, pp. 7-8, *adopted by* doc. no. 15. Upon reviewing the Commissioner's objections on the issue, Judge Bowen explicitly rejected the

Commissioner's position, distinguishing the cases upon which the Commissioner relied as not binding precedent and as having no internal legal support and/or as not containing a definitive conclusion on the propriety of remanding a case to the Commissioner based on non-compliance with a remand order from the AC. Id., doc. no. 15, pp. 2-3.

Since the time that Judge Bowen made his ruling in Dunbar, a court in the Northern District of Georgia has also reached the conclusion, in a decision that has been designated for publication, that failure to comply with a remand order from the AC is subject to judicial review and can form a basis for remand to the Commissioner. Tauber v. Barnhart, -F. Supp.2d -, No. 1:04-CV-02552-RWS, 2006 WL 2008379, at *5-6 (N.D. Ga. Mar. 31, 2006). In Tauber, the AC remanded the case to the ALJ with instructions that called for, *inter alia*, consideration of whether the jobs identified as available for the claimant "would allow her to alternate between sitting and standing. Further consideration is therefore warranted." Id. at *5. However, the ALJ's decision after remand did not consider, or even mention, a "sit/stand option," and when the claimant contended that the ALJ erred in not following the remand order from the AC, the district court agreed.[3] Id. at *5. Notably, although the Commissioner now cites this Court to an unpublished case from the Western District of Texas in support of her position that compliance with an AC's remand is not subject to

---

[3]As in the instant case and in Dunbar, in Tauber, the AC refused the claimant's request for further review of the ALJ decision entered after the AC's first remand - the very decision that the district court eventually decided had not complied with the remand order. Tauber, 2006 WL 2008379, at *5.

7

judicial review,[4] according to the published docket from the Northern District of Georgia, she did not move for reconsideration or otherwise appeal the final ruling in Tauber.

In sum, this Court declines the Commissioner's invitation to deviate from Judge Bowen's prior ruling, as well as the ruling in Tauber, that compliance with the AC's remand order is subject to judicial review. Thus, the Court next turns its attention to Plaintiff's arguments that the ALJ failed to comply with the AC's remand order.[5]

**B.      ALJ In This Case Failed to Comply with AC's Remand Order**

Turning to the details of the remand order in this case, the AC directed the ALJ to take four actions, which the Court paraphrases as follows:

> (1) Give further consideration to the medical record of evidence and make findings regarding the severity of any medically determinable physical impairments, and "[i]n so doing, evaluate the treating, examining and non-examining source opinions pursuant to the provisions of 20 CFR 416.927 and

---

[4]The Court notes that in the decision now cited by the Commissioner, the ruling from the district court presumed that "had the ALJ failed to comply with the remand order, the Appeals Council would have told him so when they reviewed the ALJ's [second] decision." Coy v. Barnhart, No. SA-04-CA-0256-RF, 2005 WL 1021041, at *1 (W.D. Tex. Apr. 25, 2005). However, as can be seen in note 3, *supra*, such a conclusion does not always prove to be accurate. Moreover, the court in Coy also specifically notes that "[a] complaint that the ALJ failed to obtain additional evidence or conduct further evaluation of an issue as directed by the Appeals Council is only relevant to the extent those matters impact the issues this Court must determine." Id. Although the complaint in Coy may not have impacted the issues that the district court had to decide, as discussed in detail, *infra*, here the matters that the ALJ failed to address are relevant to the Court's analysis.

[5]To be clear, although the Court will address Plaintiff's claims in the context in which they were offered - non-compliance with the AC remand order - the Court is in no way suggesting that whenever an ALJ reaches an unfavorable decision after remand from the AC, there must have been a violation of the remand order. In fact, as explained in note 9, *infra*, the errors necessitating remand in this case resulted from a failure to follow the rules and regulations applicable to the adjudication of a disability application that might come before an ALJ for a first hearing.

>Social Security Rulings 96-2p, 96-5p, 96-6p and 96-8p, and explain the weight given to such opinion evidence";
>
>(2) Further evaluate Plaintiff's subjective complaints and provide rationale therefor in accordance with applicable disability regulations and Social Security Rulings;
>
>(3) Give further consideration to Plaintiff's maximum RFC and provide appropriate rationale therefor in accordance with applicable disability regulations and Social Security Rulings; and
>
>(4) Obtain evidence from a vocational expert ("VE") by way of a hypothetical reflecting all of Plaintiff's impairments supported by the record in order to clarify the effect of the assessed limitations on Plaintiff's occupational base, including an identification by the VE of examples and incidences of appropriate jobs in the national economy, as well as to obtain resolution of any conflicts between the occupational evidence from the VE and information in the Dictionary of Occupational Titles (DOT).

R. 140.

Plaintiff's first assignment of error deals with direction number one, specifically the ALJ's subsequent treatment of the opinion of Robert T. Coyle, Ph.D., a state agency psychological consultant who completed a Residual Functional Capacity Evaluation - Mental and a Psychiatric Review Technique Form ("PRTF") in Plaintiff's case on September 25, 2001. R. 314-31. Neither Dr. Coyle's name nor his opinions about Plaintiff's condition appear anywhere in the ALJ's decision. In particular, Dr. Coyle opined that Plaintiff was moderately limited in her ability: (1) to maintain attention and concentration for extended periods; (2) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) to interact appropriately with the general public; and (5) to respond appropriately to changes in the work setting. R.

314-15; see also R. 328 (noting on PRTF a moderate difficulty in maintaining concentration, persistence, or pace).

The AC remand order instructed the ALJ to give further consideration to the medical evidence of record and make findings based on an evaluation of examining and non-examining sources in accordance with specific Social Security Rulings ("SSRs") and Regulations. R. 140. As Plaintiff points out, one of those SSRs states that RFC evaluations must always consider and address medical source opinions. SSR 96-8p. If conflicts between such opinions exist that result in the rejection of an opinion, that rejection must be explained. Id.

Moreover, according to Social Security Ruling 96-6p, findings of fact made by State agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p. This responsibility to address the opinions of state agency doctors is also codified at 20 C.F.R. § 416.927(f)(2)(i). Numerous courts have recognized this duty to address the opinions of state agency doctors. Higgins v. Barnhart, 294 F. Supp.2d 1206, 1212 & n.29 (D. Kan. 2003) (collecting cases in support of proposition that "the ALJ is required to evaluate, discuss and explain the weight assigned to . . . a reviewing physician"); Plourde v. Barnhart, No. 02-164-B-W, 2003 WL 22466176, at *4 (D. Me. Oct. 31, 2003) (relying on SSR 96-6p to conclude that "[w]ithout discussion or explanation, the administrative law judge implicitly rejected all of the

foregoing mental limitations (by state agency doctors). He was not free to choose simply to ignore this uncontradicted evidence, or pick and choose from it *sub silentio,* to craft an RFC."); Goberman v. Apfel, No. 2:99CV316FTM26DNF, 2001 WL 267209, at *3 (M.D. Fla. Mar. 12, 2001) ("The ALJ's decision failed to refute this opinion [of the State agency program physician]. SSR 96-6 requires the ALJ to not only consider the program physician opinions because these physicians are considered experts, but in addition, must state the weight he has given the opinions in their decision."); Ward v. Apfel, No. Civ. A. 99-1062-BH-L, 2000 WL 1367978, at * 1 (S.D. Ala. Aug. 16, 2000) (citing SSR 96-6p in support of direction that on remand the ALJ shall "consider and articulate the weight accorded the opinion of the State agency non-examining medical expert who limited plaintiff to only occasional handling, fingering, and feeling with her upper extremities").

In this case, it is clear from reading the ALJ's decision that he failed to address the opinions of Dr. Coyle, a reviewing physician, let alone provide any rationale for disregarding Dr. Coyle's opinions on the severity of Plaintiff's limitations. The Commissioner does not deny that the ALJ's decision fails to acknowledge Dr. Coyle's opinions, but she contends that because the ALJ relied on the assessments of a psychiatrist who examined Plaintiff in 2002 (rather than reviewed her records, as did Dr. Coyle in 2001), as well as on the assessments of other doctors, and reached a conclusion in accordance with these other opinions, the failure to specifically address Dr. Coyle's opinions should be excused. The problem with this approach is that, as discussed above, opinions like those of Dr. Coyle cannot simply be ignored. Moreover, the Court cannot now weigh the evidence from Dr. Coyle within the context of the entire record because "[t]he weighing of evidence is a function of the

factfinder, not of the district court." Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986).

Regardless of the directions from the AC about addressing the opinions of record, the analysis of Dr. Coyle's opinions is relevant to the issues before the Court not only because of the Commissioner's own rules and regulations requiring the opinions to be addressed, but also because of another alleged error - failing to form a complete hypothetical for the VE. At step four of the sequential evaluation process, the ALJ determined - without reference to Dr. Coyle's opinions - that Plaintiff was unable to perform her past relevant work but had the residual functional capacity to perform sedentary work, R. 29, as set forth in detail, *supra*, at pages 2 to 3. Because Plaintiff could no longer perform her past relevant work, the burden shifted to the Commissioner to show the existence of other types of substantial gainful employment that Plaintiff could perform given her age, education, previous work experience, and residual functional capacity. In this regard, the ALJ properly consulted a VE in conjunction with the Medical-Vocational Guidelines. The record reflects that the ALJ asked the VE the following:

> Q: Assume that the Claimant is 47, a female, she has a seventh grade education and a GED that has been achieved. Her past relevant work has been as a sewing machine operator. She has the following impairments: major depressive disorder - - . . . emphysema, headaches. . . . Assume that she's able to do sedentary work exertionally. . . . Mentally, she's capable of understanding and following simple instructions, handling routine job stress. . . . Handle routine job changes, she can adequately deal with supervisors, coworkers and the public. . . . And she can adequately pay attention and concentrate. . . . Would it be safe to say though that she could do all unskilled, sedentary jobs?
>
> A: Yes, sir, that she could - - - according to you, she could follow simple instructions, she could handle routine job changes?

12

> Q: Okay. And these job would exist in the hundreds of thousands?
>
> A: That's right.
>
> Q: All right. [One] more. Now, let's change the mental part of that. She could still do sedentary. . . . But her mental residual functional capacities is as reflected in Exhibit 18F, at the back of that, and for the purposes of this, I'm going to make a couple of definitions for you. Fair means the ability to function in this area is limited but - - but she could - - but satisfactory - - limited but satisfactory and - - And good means more that satisfactory. . . . All right. She has good ability to interact with supervisors. . . . And she has fair ability to follow work rules, relate to coworkers, deal with the public, use judgment, deal with work stress, function independently, maintain attention and concentration, and handle detailed but not complex job instructions and even better to hand simple job instructions. . . . She has good ability to maintain personal appearance, good ability to demonstrate reliability and fair ability to behave in an emotionally stable manner and relate predictably in social situations. And remember that I've defined fair as limited but satisfactory. . . . She could still do all unskilled work at [the] sedentary level?
>
> A: Yes. . . .

R. 54-57.

Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations, including that a claimant "often" has deficiencies in

concentration, persistence or pace, is grounds for remanding case for further proceedings). Moreover, when there are physical and psychological impairments at issue, the hypothetical must encompass both types of impairments. Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (*per curiam*) (finding it improper to assume that just because a VE was aware of psychological problems those problems were taken into account in answering a hypothetical that referred only to physical problems).

Here, Plaintiff specifically disputes the ALJ's failure to include the more significant restrictions identified by Dr. Coyle, as noted above.[6] The Commissioner makes a reasoned attempt at discrediting Dr. Coyle's findings in light of the other record evidence and argues that even if these impairments were considered, the ALJ's decision not to include them in the hypothetical was justified. Comm'r's Br., pp. 5-7 (reviewing records of other doctors who examined Plaintiff and relying on Graham, 790 F.2d at 1576, for proposition that the ALJ was not required to accept VE testimony that assumed limitations not supported by the record). It may well be, as the Commissioner argues, that in light of the overall record, Dr. Coyle's opinions are not supported and therefore do not belong in the hypothetical presented to the VE. However, it is incumbent upon the ALJ to address the opinions of the state

---

[6] The Court also notes that the terminology used by the ALJ with the VE at the hearing does not always appear to be in line with the ALJ's written decision. For example, the ALJ concluded in his written opinion that Plaintiff "has no more than a moderate limitation of concentration, persistence and pace." R. 26. This would appear to be in line with Dr. Coyle's opinion. R. 328, 330. However, when presenting the hypothetical to the VE, the ALJ asked the VE to consider a person with a "fair" ability to concentrate. R. 55. The Commissioner argues that "fair ability" is "essentially synonymous" with that of "moderate limitation." Comm'r's Br., p. 5. However, the ALJ specifically defined a "fair ability" as "limited but satisfactory." R. 55. It is not clear from the record that those definitions, as used by the ALJ at different times, are "essentially synonymous."

agency doctors so that his reasons are clear for including or omitting the limitations they identified when presenting the hypothetical to the VE.[7] Because the ALJ failed to properly address the opinions of all the state agency doctors, it is not clear that his hypothetical to the VE, on the record currently before the Court, appropriately incorporated all of Plaintiff's impairments and limitations.[8] Therefore, a remand is warranted so that the ALJ can address the opinions of the reviewing agency doctors and, if necessary, make any adjustments to the

---

[7] Although not argued by Plaintiff it also appears that the ALJ failed to address the Residual Functional Capacity - Physical and the Medical Consultant's Case Analysis of DDS doctor, Lina Caldwell, M.D., R. 335-43, as well as the Residual Functional Capacity - Physical of DDS doctor, John P. Heard, M.D. R. 301-08. Although the Commissioner relies on Dr. Caldwell's and Dr. Heard's opinions in her briefing before the Court, Comm'r's' Br., p. 6, the fact remains that the ALJ did not do so at the administrative level.

[8] Here, the Court acknowledges Plaintiff's argument that the ALJ failed to identify specific jobs that Plaintiff could perform. Although the Commissioner points out that naming specific jobs would be superfluous given that the VE said that there were hundreds of thousands of jobs available for a person with Plaintiff's limitations, it seems as though it would not be unreasonable on remand to provide at least a representative listing of the types of jobs available.

Similarly, the Commissioner disputes Plaintiff's arguments about a discrepancy between the VE's testimony and the information in the Dictionary of Occupational Titles ("DOT") because she contends that the ALJ did not find the "extreme limitation" upon which Plaintiff relies to find a discrepancy. However, given that the record evidence should be re-evaluated on remand, it is not clear whether the purported discrepancy will again arise. Nevertheless, should such a discrepancy arise, SSR 00-4p requires a "reasonable explanation" for any conflicts between VE testimony and information in the DOT. Prior to the issuance of SSR 00-4p, the Eleventh Circuit had stated, "We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT. We so hold because the DOT 'is not the sole source of admissible information concerning jobs.'" Jones, 190 F.3d at 1229-30. While the applicability of this ruling from Jones after the issuance of SSR 00-4p is not entirely clear, other courts have required the ALJ "to elicit an explanation for an apparent conflict [with the DOT] from the VE before relying on the VE's evidence." Estrada v. Barnhart, 417 F. Supp.2d 1299, 1303 & n.5 (M.D. Fla. 2006). Thus, should a discrepancy arise, the ALJ should seek out a reasonable explanation for any conflicts between the VE and the DOT.

list of impairments in the hypothetical presented to the VE.[9] Simmons v. Barnhart, No. 03-11485, slip op. at 5 (11th Cir. Nov. 28, 2003) (rejecting district court's harmless error analysis of ALJ's failure to include all identified limitations in hypothetical to VE and citing Pendley, 767 F.2d at 1561, for the proposition that courts should not assume type of answer that VE may provide if presented with additional limitations for claimant).[10]

---

[9]The Court notes that although this recommendation for remand was addressed in the context of Plaintiff's argument about not following the AC's remand order, the same analysis would hold true even if there had been no remand order from the AC to consider. Stated otherwise, the correct formulation of a hypothetical for the VE must be done whether the case is before an ALJ on its first appearance or upon remand from the AC. Likewise, as explained above, the opinions of state agency consultants must also be addressed whether done in response to an AC remand order or to a claimant's first appearance before an ALJ. Thus, although the Court herein rejects the Commissioner's position that a case cannot be remanded based on a failure to comply with a remand order, in practical application in this case, the errors identified exist not only because of instructions in the remand order, but also because of a failure to comply with the rules and regulations applicable to all like-type disability applications.

[10]Because the Court is recommending that the case be remanded based on the failure to address opinions of a state agency doctor and the potential impact on the hypothetical presented to the VE, the Court need not address Plaintiff's remaining allegations of error in detail. Of course, upon remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law. Thus, for example, Plaintiff's subjective complaints of pain, the basis for her second alleged error in this case, must be evaluated in accordance with the Eleventh Circuit's three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's pain standard, a claimant must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Id. When discrediting a claimant's subjective allegations of disabling pain, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*). However, so long as the ALJ follows the applicable standards on this, or any other issues raised by Plaintiff's disability application, reaching a conclusion that is unfavorable to Plaintiff would not equate automatically to a failure to follow a remand order.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 4th day of August, 2006, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE